board the ship. This point is therefore rendered less important, under the custom prevailing here.

## Case No. 13,698.

### SWIFT v. HATHAWAY et al.

### [1 Gall. 417.] 1

Circuit Court, D. Massachusetts. May Term, 1813.

PAYMENT—DEPOSIT WITH CONSENT OF CREDITOR.

If a debtor deposit money for his creditor with a third person, and the creditor assents thereto, or give the depositary a new credit upon the footing of such deposit, the original debtor is discharged.

[Cited in Wright v. Crockery Ware Co., 1 N. H. 282.

The action [by Jireh Swift, administrator of William Ross, against Stephen Hathaway and John W. Russell] was brought to recover the sum of $3431.87, alleged to be due on balance of account from the defendants to the intestate. On the trial, it appeared that the defendants were commission merchants at New York, and the action was brought to recover the balance due on a sale, made by them, of two thirds of the ship Neptune belonging to the intestate. The sale was made on the 1st of February, A. D. 1810, on a credit of four and six months, and notes were given by the purchasers accordingly. On the 16th of May, 1810, the defendants dissolved their partnership, and due notice was given thereof in the gazettes. John W. Russell, on the dissolution of the firm, was constituted the agent for settlement of all the partnership concerns, and immediately formed a new partnership with his brother Gilbert Russell, under the firm of John W. and Gilbert Russell. The notes were put into the hands of the new firm and collected by them, and duly credited in the account of the administrator; and due notice was given to him of all these facts. In September, 1810, he drew a bill on the new firm for part of the money so collected, which was duly paid. The residue remained in the hands of the new firm until they failed in the spring of 1811. There was considerable evidence in the cause, to show an express assent and acquiescence on the part of the administrator to the money remaining in the hands of the new firm.

W. Prescott, for plaintiff.

W. Sullivan and Harrison G. Otis, for defendant Hathaway.

STORY, Circuit Justice, in summing up, stated to the jury, that if they were satisfied, that the notes were originally lodged in the hands of J. & G. Russell with the assent of the administrator; or if afterwards he assented to the collection of the money by them, or voluntarily left the money in their hands and ratified their proceedings, the firm of Russell & Hathaway were discharged from all responsibility. If a creditor know that his debtor has lodged money in the hands of a third person for his account, and he assents to the proceeding, or gives a new credit to such person on the footing of such deposit, the original debtor is completely discharged.

The jury found a verdict, without difficulty, for the defendant Hathaway. Russell, the co-defendant, did not appear, and was defaulted. The court ordered a general judgment to be entered, that the plaintiff should take nothing by his writ.

SWIFT v. HUMPHREYS. See Case No. 5,-480.

SWIFT (SLOCUM v.). See Case No. 12,954.

## Case No. 13,699.

### SWIFT et al. v. WADY.

[Nowhere reported; opinion not now accessible.]

---

I have been obliged to give in such cases. The charge for medical or chirurgical advice, is commonly mixed in the gross, with the general items, per day or week, for boarding and attendance. The sailor must only pay for the former. I think, if the merchant cannot specify the amount of this charge, he should pay it himself; as it is impracticable to fix it at discretion, in any just proportion; and I have sometimes erred in attempting it. By the Laws of Oleron, a ship-boy, or nurse, must attend a sick seaman on shore; which would be more expensive than the controverted charges. When one of a crew is seized with an infectious disease, he should be removed from the rest, and sent on shore, at the ship's expense, for the safety of the whole, and the advantage of the owner, who must count on extra disbursements, if he will trade to ports or places, liable to such casualties. The charge should not be thrown on the sailor, and niceties insisted on, to shew that it was incurred at his request. It ought to be borne, from motives both of humanity and justice. So should it be, when proper care cannot be taken of sick seamen on board, and particularly when most, if not all, of the crew are infected. It is often endeavoured to be shewn that a sick seaman made his election to go on shore, and therefore he should pay the expense: but this is not correct. The Law of Oleron expressly directs, that a sick seaman (one really ill) shall be put on shore, and a ship-boy or nurse employed to attend him, at the expense of the ship. The interests of commerce require liberality on this subject; yet I have, frequently, and most painfully, witnessed a contrary disposition. Laws cannot be made to reach every point. Although in ordinary cases, having a medicine chest on board, may be a compliance with the act of congress, exceptions should be made, where dangerous diseases require, and compel, extraordinary remedies and expense.

1 [Reported by John Gallison, Esq.]